# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY,<br><br>    Plaintiff/<br>    Counterclaim-Defendant,<br><br>    v.<br><br>ESF QIF TRUST, by and through its trustee,<br>DEUTSCHE BANK TRUST COMPANY,<br><br>    Defendant/<br>    Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)   C.A. No.: 12-cv-317-LPS<br>)<br>)   Jury Trial Demanded<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF PHL VARIABLE INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT ESF QIF TRUST'S COUNTERCLAIMS

Keith A. Walter (#4157)
Daniel Attaway (#5130)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
PO Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, MCDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
Telephone: (713) 337-5580

*Counsel for Plaintiff/Counterclaim-Defendant*
*PHL Variable Insurance Company*

Dated: August 6, 2012

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT .................................................................................................................. 1

    A.     The Counterclaim Fails to Allege Sufficient Facts that the Policy is Valid .................... 1

    B.     The Trust's Common Law and Statutory Claims Fail ...................................................... 2

        1.   The Trust Fails to Allege a Misrepresentation ............................................................... 2

        2.   The Trust Fails to State A Claim Under the Delaware Consumer Fraud Act ................ 4

        3.   The Trust Fails to Allege Facts Necessary to Support a Claim for Breach
           of the Duty of Good Faith and Fair Dealing .................................................................. 5

        4.   Courts Cannot Enforce Illegal Contracts ....................................................................... 5

        5.   The Trust Fails to Allege Damages ................................................................................ 6

III.   CONCLUSION ............................................................................................................... 6

IV.    PRAYER ......................................................................................................................... 7

## **TABLE OF AUTHORITIES**

**Cases**

*Ayers v. Quillen*, No. Civ. A. 03C-02-004-RFS,
 2004 WL 1965866 (Del. Super. June 30, 2004) ................................................................ 4

*Chiarella v. U.S.*,
 445 U.S. 222 (1980) ............................................................................................................ 3

*Coleman Dupont Homsey v. Vigilant Ins. Co.*,
 496 F.Supp.2d 433 (D. Del. 2007) ..................................................................................... 5

*Fulkerson v. MHC Operating Ltd.*,
 No. Civ. A. 01C-07-020, 2002 WL 32067510 (Del. Super. June 18, 2002) ...................... 5

*Grunstein v. Silva*,
 No. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009). ............................................ 3

*Kuroda v. SPJS Holdings, L.L.C.*,
 971 A.2d 872 (Del. Ch. 2009) ........................................................................................ 3, 5

*Lee ex rel. B.L. v. Picture People, Inc.*,
 No. K10C-07-002 (RBY), 2012 WL 1415471 (Del. Super. March 19, 2012) ................... 4

*Mut. Life Ins. Co. of N.Y. v. Phinney*,
 178 U.S. 327 (1900) ............................................................................................................ 3

*Nieves v. All Star Titles, Inc.*, No. 10C-03-191 PLA,
 2010 WL 2977966 (Del. Super. July 27, 2010) ................................................................. 4

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*,
 28 A.3d 1069 (Del. 2011) ........................................................................................... 1, 2, 6

*Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR,
 2001 WL 641737 (D. Del. May 24, 2001) ......................................................................... 2

*Sykes v. Joseph O'Neal & Sons Auctioneers & Appraisers*, No. Civ. A. 07-01-076,
 2009 WL 2449259 (Del. Com. Pl. Aug. 11, 2009) ............................................................ 5

**Statutes**

6 Del. C. § 2512 ................................................................................................................................ 4

I.      INTRODUCTION

The Counterclaim filed by ESF QIF Trust, by and through its trustee, Deutsche Bank Trust Company Delaware (the "Trust") [D.I. 8] attempts to enforce an illegal contract by asserting claims for a declaratory judgment, violation of the Delaware Consumer Fraud Act, fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, and promissory estoppel. Its claims fail, however, due to the lack of an actionable misrepresentation or breach and, as such, the Counterclaim should be dismissed.

II.     ARGUMENT

A.  The Counterclaim Fails to Allege Sufficient Facts that the Policy is Valid

The Trust fails to set forth facts that, if true, would entitle it to a declaration that the Policy is valid. In an unabashed attempt to limit the Delaware Supreme Court's holding in *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*,[1] the Trust asserts that the only fact necessary to determine the existence of an insurable interest is that the insured paid the initial policy premiums. The Trust goes so far as to contend that the facts regarding how the Trust came to own the Policy are irrelevant. Opposition to Motion to Dismiss ("Opposition") at 8 [D.I. 15]. Yet, the Delaware Supreme Court charged courts with "scrutiniz[ing] the circumstances under which the policy was issued" when examining whether an insurable interest exists. *Dawe*, 28 A.3d at 1076. *Dawe* requires courts to look past mere "technical compliance" in determining the existence of an insurable interest. *See id.* at 1078. The identity of the premium payor is not dispositive to determining whether an insurable interest exists. *Id.* The Trust's attempt to dismiss the requirement that courts scrutinize the circumstances under which a policy was obtained as a "laundry list" of irrelevant facts is simply incorrect. Opposition at 8.

---

[1] 28 A.3d 1069, 1075 (Del. 2011).

Consequently, the Trust fails to meet the standard set out in *Dawe* and, thus, fails to state a claim upon which relief can be granted. *See Dawe*, 28 A.3d at 1075.

**B.     The Trust's Common Law and Statutory Claims Fail**

The Trust bases its common law and statutory claims on a contention that Phoenix (1) encouraged brokers to place STOLI policies, (2) tracked suspected STOLI policies on a spreadsheet, and (3) has filed lawsuits seeking to void policies for lack of insurable interest. Even if true, the allegations give rise to no liability, as the Trust points to no misrepresentation by Phoenix, and cannot establish that Phoenix concealed anything from the Trust. Further, as noted in the Motion, the Trust failed to allege fraud with requisite particularity.

**1.     The Trust Fails to Allege a Misrepresentation**

The Trust cannot establish the most basic elements of fraud or negligent misrepresentation. The Trust asserts that it purchased the Policy in reliance on a belief that the Policy was valid. Opposition at 2, 14. The Trust admits that it did not purchase the Policy from Phoenix. The Trust does not allege that Phoenix made any representations in connection with the Trust's purchase of the Policy.

The Trust also asserts that Phoenix induced it to pay premiums even though Phoenix does not intend to pay a claim upon Mr. Szalay's death. *Id.* at 13. To the extent Phoenix denies a valid claim, it will be Phoenix's breach of contract that causes the Trust's damages. *See Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001) ("A breach of contract claim cannot be bootstrapped into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform." (internal quotations omitted)). Of course, as Mr. Szalay has not died, this is entirely speculative. Unless and until a breach occurs, the Trust has not suffered damages.

The Trust also alleges that Phoenix fraudulently concealed a plan to deny a hypothetical claim under the Policy. Opposition at 2, 11-12. The Trust couches this as a fraud claim, but it is, at best, either a representation regarding future performance or a claim for anticipatory repudiation of a contract. Representations regarding future performance are non-actionable. *See, e.g.*, *Grunstein v. Silva*, No. 3932-VCN, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8, 2009). Moreover, the Trust does not allege facts establishing the central element of a fraudulent concealment claim—a duty of disclosure obligating Phoenix to disclose any alleged secret intent to deny death claims. *See, e.g.*, *Chiarella v. U.S.*, 445 U.S. 222, 227–28 (1980) ("There must be a duty to disclose, however, for there to be a claim of fraud for failure to disclose.").

Further, Delaware law does not permit tort recovery for a breach of contract, reasoning that such expansive recovery would unjustifiably burden business interests. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) ("Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff 'generally must sue in contract, and not in tort.'"). Here, the Trust alleges no non-economic losses in connection with its fraud claim and, indeed, it has none. Thus, it has not alleged a cognizable tort. To the extent Phoenix intends to—and actually does—breach the Policy, the Trust may pursue its contractual remedies.

Moreover, even if the Trust alleged a representation regarding the Policy's validity, as the Trust does not contend that the Policy is void, it appears that the Trust is alleging that Phoenix misrepresented <u>Phoenix's belief</u> concerning the Policy's validity. This is the very definition of a non-actionable legal opinion. *See Mut. Life Ins. Co. of N.Y. v. Phinney*, 178 U.S. 327, 328–42 (1900) (statement by insurance agent that policy had lapsed where, under applicable New York statute it had not, could not form basis of fraud claim because parties are "presumed, as a matter of law, to know [statutes'] legal effect and operation").

3

## 2. The Trust Fails to State A Claim Under the Delaware Consumer Fraud Act

The Delaware Consumer Fraud Act ("CFA") applies only to fraudulent conduct occurring in Delaware. *See* 6 Del. C. § 2512. The Trust claims that it meets this requirement, essentially because the Policy was issued to the John Szalay Insurance Trust III, a Delaware statutory trust; thus, any fraudulent representations were made to a Delaware trust. *See* Opposition at 10-11. The mere fact that the injured party is located in Delaware, however, is not sufficient to constitute a "nexus" to Delaware under the CFA. *See Nieves v. All Star Titles, Inc.*, No. 10C-03-191 PLA, 2010 WL 2977966, at *5 (Del. Super. July 27, 2010). The court in *Nieves* dismissed the plaintiff's CFA claim, even though he was a Delaware resident and the settlement involved property in Delaware. *Id.* The court focused instead on the defendant's location in Maryland and that the defendant's conduct occurred in Maryland. *Id.* The court concluded that the plaintiff failed to allege facts to support that the defendant "provided services or made any representations or omissions in Delaware." *Id.* Similarly, Phoenix is a Connecticut company with its principal place of business in Connecticut. Counterclaim at ¶ 9. Any alleged conduct by Phoenix in developing a fraudulent plan occurred in Connecticut. That the subsequent harm the Trust claims it suffered occurred in Delaware has no bearing on the Court's CFA analysis.

Moreover, the Trust wrongly claims that post-sale misrepresentations can support a CFA claim. Opposition at 12. The single case to which it cites is contradicted by the great weight of Delaware law. *See, e.g., Lee ex rel. B.L. v. Picture People, Inc.*, No. K10C-07-002 (RBY), 2012 WL 1415471, at *9 (Del. Super. March 19, 2012) (finding that statements made after signing of contract were "post-sale" and thus not "in connection with the sale or advertisement of the merchandise"); *Ayers v. Quillen*, No. Civ. A. 03C-02-004-RFS, 2004 WL 1965866, at *6 (Del. Super. June 30, 2004) ("[P]ost-sale representations do not constitute consumer fraud under the

[CFA]."); *Fulkerson v. MHC Operating Ltd.*, No. Civ. A. 01C-07-020, 2002 WL 32067510, at *3 (Del. Super. June 18, 2002) (same); *Sykes v. Joseph O'Neal & Sons Auctioneers & Appraisers*, No. Civ. A. 07-01-076, 2009 WL 2449259, at *6 (Del. Com. Pl. Aug. 11, 2009) (same). The conduct cited by the Trust, such as Phoenix's alleged misrepresentations regarding its intention to "comply with its contractual obligations" each time it accepted premiums, occurred after the Policy's issuance. *See* Opposition at 11. Accordingly, given the above, this Court should dismiss the Trust's CFA counterclaim.

   3.   **The Trust Fails to Allege Facts Necessary to Support a Claim for Breach of the Duty of Good Faith and Fair Dealing**

A breach of the duty of good faith and fair dealing only arises when there is a death claim; as such, it does not apply to the Policy. *See Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F.Supp.2d 433, 437 (D. Del. 2007). Moreover, a claim for breach of the duty of good faith and fair dealing requires the invocation of a specific implied contractual obligation that *does not override the express terms of the contract itself. Kuroda*, 971 A.2d at 888. The Trust claims that Phoenix's alleged plan to not investigate claims and unjustifiably deny coverage is a breach of its duty of good faith and fair dealing to the Trust. Opposition at 15. The duty to investigate claims and pay benefits is not an implied obligation; it is an express obligation arising directly from the contract. Accordingly, this Court should grant Phoenix's Motion. *See Kuroda*, 971 A.2d at 888 ("To the extent that Kuroda's implied covenant is premised on the failure of defendants to pay money due under the contract, the claim must fail because the express terms of the contract will control such a claim.").

   4.   **Courts Cannot Enforce Illegal Contracts**

The Trust seeks an order requiring, under theories of equitable estoppel and waiver, enforcement of the Policy, regardless of validity. Yet, contracts lacking an insurable interest

5

cannot be enforced. *See, e.g.*, *Dawe*, 28 A.3d at 1067 ("A court may never enforce agreements void *ab initio,* no matter what the intentions of the parties."). As such, these claims fail.

### 5. The Trust Fails to Allege Damages

The Trust claims it has suffered damages, and will continue to suffer damages, as a result of Phoenix's actions, due to a loss of market value. Any claim that the market's devaluation of the Policy is caused by Phoenix's secret intent is a vassal argument. The original Policy owner contracted with Phoenix for insurance coverage, not for an assurance as to the Policy's market value. Phoenix is not a guarantor of secondary market value and is not alleged to have any obligation to support the Policy's value on the secondary market. Phoenix's alleged secret plan, not disclosed to anyone nor affirmatively represented to the Trust, simply could not proximately cause any injury, and the assertion that it could is far too nebulous to be a proximate cause of any fluctuation within the market. Finally, whether it relates to paying premiums or the market's valuation of the Policy, to the extent that the Trust's damages stand and fall based on whether the Policy is void or valid, its "damages" are caused not by Phoenix, but by the inherent legal condition of the Policy itself at the time of issuance.

### III. CONCLUSION

The Trust asks this Court to issue a guaranty that if the Policy happens to be in force when the insured dies that Phoenix will pay the death benefits, regardless of whether the Policy is legally void. Because the insured has not died, because nothing Phoenix does today can impact whether the Policy is valid or void, and because Phoenix cannot be liable for any secret plan to look to the courts for guidance on whether the Policy might be valid or void, this Court should dismiss the Trust's Counterclaims noted above.

## IV. PRAYER

For the foregoing reasons, Phoenix respectfully requests that the Court dismiss the Trust's Counterclaims for a declaratory judgment, violations of the Delaware Consumer Fraud Act, fraud, negligent misrepresentation, breach of the duty of good faith and fair dealing, and promissory estoppel, and grant Phoenix such other relief to which it may be justly entitled.

Dated: August 6, 2012               Respectfully submitted,

                                    */s/ Keith A. Walter*
                                    Keith A. Walter (#4157)
                                    Daniel Attaway (#5130)
                                    CONNOLLY BOVE LODGE & HUTZ LLP
                                    The Nemours Building
                                    1007 N. Orange Street
                                    PO Box 2207
                                    Wilmington, DE 19899
                                    Telephone: (302) 658-9141
                                    Facsimile: (302) 658-5614
                                    Email: KWalterJr@cblh.com

                                    Thomas F.A. Hetherington
                                    Jarrett E. Ganer
                                    EDISON, MCDOWELL & HETHERINGTON LLP
                                    Phoenix Tower
                                    3200 Southwest Freeway, Suite 2100
                                    Houston, Texas 77027
                                    Telephone: (713) 337-5580

                                    *Counsel for Plaintiff/Counterclaim-Defendant*
                                    *PHL Variable Insurance Company*

4947753_1